**TOWN AND COUNTRY EQUIPMENT, INC., Plaintiff,**

v.

**MASSEY–FERGUSON, INC., Defendant.**

**Civ. A. No. 90–1388.**

United States District Court, D. Kansas.

Dec. 8, 1992.

Richard A. Benjes, Hutchinson, KS, for plaintiff.

Paul S. McCausland, Young, Bogle, McCausland, Wells & Clark, Wichita, KS, for defendant.

### MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on defendant's motion for partial summary judgment. (Doc. 18). Plaintiff, Town and Country Equipment, Inc. ("Town and Country"), was in the business of selling farm implements, machinery, attachments and repair parts. Plaintiff held two stores, one in Wichita, Kansas, and one in Hutchinson, Kansas. Defendant, Massey–Ferguson, Inc., manufactures and wholesales such equipment and parts. Plaintiff and defendant had franchise agreements under

which plaintiff retailed defendant's merchandise. The agreements required plaintiff to maintain a certain stock of defendant's merchandise.

In 1988 and 1989 plaintiff gave written notice of termination of the franchise agreements. Plaintiff alleges that the defendant refused to repurchase some of its repair parts and that the defendant agreed to repurchase other repair parts, but breached the agreement. Kansas law requires wholesalers in such a situation to repurchase repair parts inventory for 85% of the current net price. K.S.A. § 16–1001, *et seq.* (1988 & 1991 Supp.). Plaintiff sold the parts to third parties and now seeks damages in the amount of the difference between 85% of the price of the parts and the amount plaintiff realized on the resale. Defendant argues that the Kansas repurchase statute does not permit such recovery.

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The parties agree on the facts as stated above for purposes of this motion.

■ The parties agree that Kansas law governs this case. At issue is the interpretation of the Kansas statute covering contracts to maintain stock of farm equipment. K.S.A. § 16–1001, *et seq.* K.S.A. § 16–1002(a) (1991 Supp.) provides that whenever a written franchise agreement for the sale of farm equipment is terminated, the wholesaler, manufacturer, or distributor shall pay the franchisee a sum equal to 100% of the price of new farm implements and 85% of the price of new repair parts; when payment is made, title to the merchandise passes back to the wholesaler, manufacturer or distributor.[1] In the alternative, the retailer may elect to keep the merchandise. *Id.* If the retailer elects repurchase, payment becomes due within sixty days of when the retailer returns the merchandise. *Id.* K.S.A. § 16–1004 provides a cause of action for the retailer if the manufacturer, wholesaler or distributor fails to make a timely payment or credit.

Defendant argues that by reselling the repair parts, plaintiff elected to keep the

---

1. K.S.A.1990 Supp. § 16–1002(a) states in pertinent part:

Whenever any person, firm or corporation engaged in the business of selling and retailing farm implements, machinery, attachments or repair parts therefor enters into a written or parol contract, sales agreement or security agreement evidenced by a franchise agreement whereby such retailer agrees to maintain a stock of parts or complete or whole implements, machines or attachments with any wholesaler, manufacturer or distributor of such implements, machinery, attachments or repair parts, and either [party] desires to cancel or discontinue the contract, such wholesaler, manufacturer or distributor shall pay to such retailer ..., unless the retailer should desire such merchandise, a sum equal to 100% of the net cost of all new, unused, undamaged, complete farm implements, machinery and attachments and 85% of the current net prices on new, unused, undamaged repair parts, including superseded parts, which ... had previously been purchased from such wholesaler, manufacturer, distributor.... Upon the payment or allowance of credit to the retailer's account of the sum required by this section, the title to such farm implements, machinery, attachments and repair parts therefor shall pass to the manufacturer, wholesaler or distributor making such payment, and such manufacturer, wholesaler or distributor shall be entitled to the possession of such farm implements, machinery, attachments or repair parts. All payments or allowances of credit due retailers shall be paid or credited within 60 days after the return of the implements, machinery, attachments or repair parts.

repair parts and forfeited its right to recover 85% of their price. The Kansas courts have not decided this issue. Several states have statutory provisions identical to or similar to the Kansas statute. *E.g.,* Ark. Stat.Ann. § 4–72–301, *et seq.* (1992); O.C.G.A. § 13–8–21, *et seq.* (1992); R.R.S.Neb. § 69–1501, *et seq.;* N.D.Cent. Code, § 51–07–01, *et seq.* (1991); S.C.Code Ann. § 39–59–10, *et seq.* (1992); S.D.Codified Laws § 37–5–5, *et seq.* (1992). Only the Supreme Court of North Dakota has addressed the issue of whether the repurchase statute permits the retailer to sell repair parts to a third party and collect from the wholesaler the difference between the sale price and the statutory repurchase price.[2] *Kaisershot v. Gamble–Skogmo, Inc.,* 96 N.W.2d 666 (N.D.1959). The North Dakota court held that the decision to resell the parts amounts to a decision to retain them. *Id.* at 670. Therefore, the retailer could not elect to keep and resell the parts and force the wholesaler to pay the difference. *Id.* at 671.

The court believes the reasoning of the *Kaisershot* decision applies equally to the Kansas statute. First, the Kansas repurchase statute states that the manufacturer, wholesaler or distributor is required to make payment within sixty days of the return of the merchandise. K.S.A. § 16–1002(a). Therefore, it is by actually returning the merchandise that the retailer elects the repurchase option. When the retailer sells to a third party rather than returning the merchandise, it elects to treat the merchandise as its own, and the obligation to pay 85% of the price of repair parts never arises.

 Second, the remedy plaintiff seeks is generally available to sellers under the Uniform Commercial Code ("UCC"). K.S.A. § 84–2–703 (1988). Plaintiff argues that the UCC applies here and that the UCC in fact requires plaintiff to mitigate its damages. However, "[i]t is a cardinal rule of law that statutes complete in themselves, relating to a specific thing, take

precedence over general statutes or other statutes which deal only incidentally with the same question or which might be related to it." *Chelsea Plaza Homes, Inc. v. Moore,* 226 Kan. 430. syl. ¶ 1, 601 P.2d 1100 (1979). Here the repurchase statute deals specifically with repurchase of merchandise upon termination of a retail franchise for farm machinery and parts. The UCC deals with a broad spectrum of situations. The repurchase statute is complete in itself, providing a specific remedy for violations. K.S.A. § 16–1004. Therefore, under Kansas law the repurchase statute preempts the field as to all transactions within its scope. *Chelsea Plaza Homes,* 226 Kan. at 434, 601 P.2d 1100 (holding that the Residential Landlord Tenant Act preempts its field making remedies under the Consumer Protection Act unavailable for violations covered by the Landlord Tenant Act). The plaintiff, therefore, was not obligated to mitigate its damages as the UCC requires, *see Kaisershot,* 96 N.W.2d at 672, and the remedy provision of § 16–1004 is exclusive.

Finally, the repurchase statute, as interpreted in *Kaisershot,* strikes a balance between the interests of the wholesaler and those of the retailer. Expanding the remedies available to the retailer upon the wholesaler's breach of its statutory obligation would upset that balance. The clear purpose of the repurchase statute is to facilitate the liquidation of farm equipment and repair parts upon termination of a franchise. Because the wholesaler has required the retailer to maintain a stock of its inventory, it is fair to require the wholesaler to repurchase its merchandise upon termination of the franchise. This disadvantage to the wholesaler is offset by the wholesaler's regaining title to the merchandise upon payment. If retailers were allowed to "mitigate damages" in the manner that plaintiff proposes, then wholesalers would be subject to the obligation of the repurchase statute without assurance of receiving the corresponding benefit.

K.S.A. § 16–1002(a).

---

**2.** The language of the North Dakota repurchase provision is nearly identical to the language of

782

For purposes of this motion there is no genuine issue of material fact regarding plaintiff's claim for damages resulting from defendant's alleged violation of K.S.A. § 16–1002(a). For the reasons stated above the law of Kansas precludes the recovery plaintiff seeks. The defendant is therefore entitled to partial summary judgment. Fed.R.Civ.P. 56(c).

IT IS BY THIS COURT THEREFORE ORDERED that defendant's motion for partial summary judgment (Doc. 18) is hereby granted.